UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

MICHAEL ESKENASY,

Plaintiff,

v.

LINKEDIN CORPORATION, et al.,

Defendants.

Case No. 26-cv-06047-VKD

**ORDER FOR REASSIGNMENT TO A DISTRICT JUDGE;**

**REPORT AND RECOMMENDATION TO DISMISS AMENDED COMPLAINT**

Re: Dkt. No. 8

On June 18, 2026, plaintiff Michael Eskenasy, who is representing himself, filed a complaint against LinkedIn Corporation ("LinkedIn"); Microsoft Corporation; and 25 Doe defendants, purporting to assert multiple state law claims. Dkt. No. 1. Mr. Eskenasy also filed an application to proceed *in forma pauperis* ("IFP"). Dkt. No. 2. On July 8, 2026, the Court granted Mr. Eskenasy's IFP application but found his complaint failed to state a basis for the exercise of subject matter jurisdiction or any claim for relief. Dkt. No. 5. The Court gave Mr. Eskenasy an opportunity to amend his complaint. *Id.* On August 26, 2026, Mr. Eskenasy belatedly filed an amended complaint, asserting two claims against LinkedIn: (1) breach of contract, and (2) breach of the implied covenant of good faith and fair dealing. Dkt. No. 8.

For the reasons discussed below, the Court directs the Clerk of the Court to reassign this matter to a district judge, with the recommendation that the amended complaint be dismissed without further leave to amend. The Court recommends that the action be dismissed for lack of subject matter jurisdiction, without prejudice to filing an appropriate complaint in state court.

United States District Court
Northern District of California

**REPORT AND RECOMMENDATION**

**I. MR. ESKENASY'S AMENDED CLAIMS**

According to the amended complaint, Mr. Eskenasy is the "founder and architect of ChefreyOS," "a body of operating architecture [p]laintiff describes as Human Cognitive Infrastructure." Dkt. No. 8 ¶¶ 27, 95. Mr. Eskenasy alleges that in May 2026, he "observed a sequence of public LinkedIn content associated with LinkedIn member Ljubica Maric," a non-party. *Id.* ¶ 108. He claims that he "considered this sequence relevant to earlier ChefreyOS concepts concerning invisible coordination, fragmented systems, cognitive burden, ecosystem continuity, hospitality as a memory system, and infrastructure beneath the visible service experience." *Id.* ¶ 116.

Mr. Eskenasy alleges that he reported Ms. Maric's content to LinkedIn on May 27, 2026 and May 31, 2026. *See id.* ¶¶ 131, 139. He further alleges that on June 3, 2026, a "LinkedIn Trust and Consumer Support Consultant" requested website links to the LinkedIn profile and content at issue. *Id.* ¶ 146. Mr. Eskenasy alleges that he responded that because "the reported member and associated users had blocked and reported him," he was unable to access the reported LinkedIn profile or content. *Id.* ¶¶ 148-150. Mr. Eskenasy alleges that the LinkedIn consultant responded that LinkedIn would not be able to take any action or investigate his complaint further without the reported profile link. *Id.* ¶ 158.

Mr. Eskenasy further alleges that on June 11, 2026, he "encountered a LinkedIn security gate while attempting to access his account." *Id.* ¶ 167. Specifically, he claims that LinkedIn temporarily restricted his access to his LinkedIn account and made him undergo "identity verification." *Id.* ¶ 168. Mr. Eskenasy alleges that he encountered errors when attempting to verify his identity. *Id.* ¶¶ 173-176. He alleges that he "has not regained ordinary access to the original account." *Id.* ¶ 190. Mr. Eskenasy alleges that LinkedIn has not explained why his access to his account has been restricted. *Id.* ¶¶ 186-188. Mr. Eskenasy states that he does not know whether his account has been "temporarily restricted, permanently restricted, terminated, hidden during verification, or placed into some other account state." *Id.* ¶ 198.

According to the amended complaint, Mr. Eskenasy "does not allege that LinkedIn

intentionally suppressed his account, retaliated against him, shadow-banned him, or deliberately caused his identity-verification attempts to fail," "does not allege that LinkedIn guarantees uninterrupted or error-free services," and "does not allege that LinkedIn must permanently retain or display every item of member content." *Id.* ¶¶ 5, 91, 92. Rather, Mr. Eskenasy claims "[t]he contractual claim is narrower" because he "alleges that LinkedIn failed to provide a functioning complaint and account-recovery process after accepting and routing his complaint, required information made unavailable by the platform's blocking structure, restricted his original account, and presented a required recovery path that repeatedly failed without providing meaningful alternative review." *Id.* ¶¶ 93-94.

The amended complaint asserts two claims against LinkedIn: (1) breach of contract, and (2) breach of the implied covenant of good faith and fair dealing. *Id.* ¶¶ 233-288. Mr. Eskenasy seeks damages, declaratory relief, injunctive relief, pre- and post-judgment interest, costs, "[r]estitution of paid fees attributable to unavailable services," and "[a]ppropriate preservation relief concerning records directly relevant to the pleaded claims." *Id.* at 25.

## II. LEGAL STANDARD

While pro se pleadings are liberally construed, a complaint does not state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 12(b)(6). A complaint must include facts that are "more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Only plausible claims for relief will survive a motion to dismiss. *Id.* at 679. A claim is plausible if the facts pled permit the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.*

As a threshold matter, the Court must examine whether it has jurisdiction over the claims alleged before considering whether the complaint states any claims on which relief may be granted. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it

has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction).”).

## III. REVIEW OF AMENDED COMPLAINT

### A. Subject Matter Jurisdiction

For a case to proceed in federal court, the Court must have subject matter jurisdiction over the claims alleged. “It is a fundamental precept that federal courts are courts of limited jurisdiction.” *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978); *see also Ngoc Lam Che v. San Jose/Evergreen Cmty. Coll. Dist. Found.*, No. 17-cv-00381-BLF, 2017 WL 2954647, at *2 (N.D. Cal. July 11, 2017) (“Limits upon federal jurisdiction must not be disregarded or evaded.”).

Mr. Eskenasy asserts that the Court has jurisdiction in this matter under 28 U.S.C. § 1332 (diversity jurisdiction). Dkt. No. 8 ¶¶ 39-56. Federal district courts have diversity jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and is between citizens of different states. 28 U.S.C. § 1332(a). “The party seeking to invoke the district court’s diversity jurisdiction always bears the burden of both pleading and proving diversity jurisdiction.” *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613-14 (9th Cir. 2016). While the amended complaint plausibly alleges diversity of citizenship by stating that Mr. Eskenasy is a citizen of Idaho and LinkedIn is a citizen of Delaware and California, *see* Dkt. No. 8 ¶¶ 25, 33-35, 40, it fails to plausibly allege that the amount in controversy exceeds $75,000.

Mr. Eskenasy asserts that the “amount in controversy exceeds seventy-five thousand dollars, exclusive of interest and costs, based principally on the value to [p]laintiff of the injunctive and declaratory relief requested.” *Id.* ¶ 41. With respect to the purported value of this relief, he alleges that “the value of restoring the original professional-identity account and its associated functions, or replacing those functions through equivalent infrastructure and relationship reconstruction[ ] exceeds seventy-five thousand dollars.” *Id.* ¶ 52. In other words, the value of the equitable remedies Mr. Eskenasy seeks depends entirely on the subjective value he appears to have assigned them. The allegations supporting this value are conclusory and do not

United States District Court
Northern District of California

provide any factual basis from which the Court may infer that the amended complaint satisfies the amount-in-controversy requirement. *See, e.g.*, *Watters v. Parviz*, No. 23-35601, 2024 WL 5423073, at *3 (9th Cir. Feb. 21, 2025) (plaintiff's speculation "that 'special and punitive damages could be well into the hundreds of thousands of dollars'" was insufficient to meet amount-in-controversy requirement where "the complaint itself contained no allegations that could justify the same."); *Afedo v. Google LLC*, No. 25-cv-01884-NC, 2025 WL 4720582, at *5 (N.D. Cal. July 10, 2025) (concluding plaintiff failed to plead requisite amount in controversy based on demand for an injunction requiring Google to reinstate plaintiff's account and "implement equitable verification processes"); *Quiroz v. Praetorian Ins. Co.*, No. 14-cv-01652 HRL, 2014 WL 3845418, at *2 (N.D. Cal. Aug. 5, 2014) (finding plaintiff failed to meet amount-in-controversy requirement where there was no "indication that the cost of complying with any injunction would exceed the amount in controversy for jurisdictional purposes").

Accordingly, the Court concludes that the amended complaint does not adequately plead federal subject matter jurisdiction.

**B. Failure to State a Claim**

In considering whether to recommend dismissal with or without leave to amend, the Court also considers whether the amended complaint states any plausible for relief. As noted above, the amended complaint asserts two claims: (1) breach of contract and (2) breach of the implied covenant of good faith and fair dealing.

**1. Breach of Contract**

To state a claim for breach of contract, Mr. Eskenasy must plausibly allege (1) the existence of a contract with LinkedIn, (2) Mr. Eskenasy's performance or excuse for nonperformance, (3) LinkedIn's breach, and (4) resulting damages to Mr. Eskenasy. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011).[1]

[1] The Court assumes that Mr. Eskenasy's claims are based on California law because "a federal court exercising jurisdiction over non-federal claims must usually apply the substantive law of the state in which it sits." *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 n.6 (9th Cir. 1996) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938)). Mr. Eskenasy states that LinkedIn's User Agreement provides that disputes relating to the agreement or services for users outside certain European countries are governed by California law. Dkt. No. 8 ¶ 60.

The amended complaint alleges Mr. Eskenasy and LinkedIn entered a binding contract through the LinkedIn User Agreement. Dkt. No. 8 ¶ 234. According to the amended complaint, Section 5 of the User Agreement "permits LinkedIn to terminate the contract with notice." *Id.* ¶ 248. Mr. Eskenasy further alleges that pursuant to Section 9 of the User Agreement, "LinkedIn provides a policy and process for complaints concerning member content." *Id.* ¶ 236. To the extent LinkedIn has terminated his LinkedIn account, Mr. Eskenasy claims LinkedIn breached Section 5 of the User Agreement by failing to provide clear notice of termination. *Id.* ¶ 249. Mr. Eskenasy contends that if LinkedIn has temporarily restricted his account, rather than terminated his account, LinkedIn "failed to provide a functional route through which the temporary restriction could be reviewed and resolved." *Id.* ¶ 250. Mr. Eskenasy further alleges LinkedIn breached Section 9 of the User Agreement by requiring Mr. Eskenasy to submit website links to the reported LinkedIn profile and content to proceed with his complaint. *Id.* ¶¶ 239-243. Mr. Eskenasy claims LinkedIn's complaint resolution process "does not constitute the functioning policy and process promised by Section 9." *Id.* ¶ 243.

First, Mr. Eskenasy's claim that LinkedIn breached Section 5 of the User Agreement fails because Mr. Eskenasy has not alleged that LinkedIn terminated his account without notice. In fact, the amended complaint alleges that LinkedIn "displayed a *temporary* account restriction and required identity verification." *Id.* ¶ 168 (emphasis added). Mr. Eskenasy argues that to the extent LinkedIn has only suspended his account, LinkedIn failed to provide a process through which he could resolve the suspension. However, the amended complaint concedes that Section 3.2 of the User Agreement "gives LinkedIn broad rights to change, suspend, or discontinue services and states that LinkedIn does not promise to store or continue displaying member content." *Id.* ¶ 81. Mr. Eskenasy does not point to, and the User Agreement does not seem to include, a provision that would constitute a promise by LinkedIn to provide a process to address any suspensions and appeal them. Mr. Eskenasy fails to plausibly allege a breach of contract claim for the termination or suspension of his LinkedIn account. *See Baldwin Kennedy v. Meta Platforms Inc.*, No. 23-cv-06615-HSG, 2025 WL 1935433, at *4 n.4 (N.D. Cal. June 5, 2025) (holding plaintiff failed to plausibly allege breach of contract for Facebook's failure to "ensur[e] her ongoing access to her

United States District Court
Northern District of California

account" because plaintiff "failed to identify any enforceable duty under the Terms of Use that Defendant allegedly breached").

Second, Mr. Eskenasy alleges that LinkedIn breached Section 9 of the User Agreement because LinkedIn's complaint resolution process is not "functional." As noted above, Section 9 states that "LinkedIn provides a policy and process for complaints concerning content shared by its members." Dkt. No. 8 ¶ 88. According to the amended complaint, LinkedIn provided a process for Mr. Eskenasy to submit a complaint concerning content shared by another user and informed Mr. Eskenasy that LinkedIn would be unable to take any further action without website links to the reported profile and content. *See id.* ¶¶ 131-159. Mr. Eskenasy identifies nothing in the User Agreement that requires LinkedIn to "provide an alternative method for identifying the [reported] member through the name, screenshots, post subjects, account records, or information already supplied." *See id.* ¶ 160. Nor does the User Agreement require LinkedIn to "identify a legal or specialized intake process capable of accepting the record without the unavailable URL." *See id.* ¶ 161. Mr. Eskenasy fails to identify any specific provision of the User Agreement regarding the handling of complaints that LinkedIn has breached. *See, e.g.*, *King v. Facebook, Inc.*, No. 19-cv-01987-WHO, 2019 WL 6493968, at *2 (N.D. Cal. Dec. 3, 2019) (dismissing breach of contract claim against Facebook where plaintiff failed to identify the specific provision of the terms of use that Facebook breached), *aff'd*, 845 F. App'x 691 (9th Cir. 2021); *Al -Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 885 (N.D. Cal. 2022) (dismissing breach of contract claim based in part on Twitter's failure "to adequately or meaningfully address and consider [plaintiff's] appeal from the suspension of his account" because plaintiff failed to identify the specific provision of the terms of service that Twitter breached).

Accordingly, the amended complaint fails to plausibly state a claim for breach of contract.

**2. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Mr. Eskenasy's claim for breach of the implied covenant of good faith and fair dealing also fails to plausibly state a claim. "Every contract contains an implied-in-law covenant of good faith and fair dealing." *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 965 (N.D. Cal. 2015) (citing *Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 683-84 (Cal. 1988)). "Simply

stated, the burden imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement. Or, to put it another way, the implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393 (Cal. Ct. App. 1990) (citations and quotations omitted). "The precise nature and extent of the duty imposed . . . will depend on the contractual purposes." *Id.* (citation and quotations omitted). "If the allegations do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated." *Id.* at 1395.

Here, the amended complaint alleges that LinkedIn breached the implied covenant of good faith and fair dealing because LinkedIn did not provide a "functioning recovery or redress path" for Mr. Eskenasy to challenge the restriction of his account and because LinkedIn's process for addressing Mr. Eskenasy's complaint about another user's content was deficient. *See* Dkt. No. 8 ¶¶ 267-288. These are the same allegations that are asserted in support of Mr. Eskenasy's breach of contract claim. As discussed above, Mr. Eskenasy identifies no source for a purported obligation owed by LinkedIn to provide a process for disputing account restrictions, or to undertake the particular complaint resolution processes Mr. Eskenasy favors, and it cannot be reasonably inferred that such an obligation is implied by virtue of the fact that Mr. Eskenasy uses LinkedIn and has an account. *See, e.g.*, *Chou v. Charles Schwab & Co.*, No. 21-cv-06189-LB, 2022 WL 1127384, at *6 (N.D. Cal. Mar. 22, 2022) (dismissing breach of the implied covenant of good faith and fair dealing claim because "[t]he Agreement defines [defendant's] liability, and . . . it imposed no duty on [defendant] to provide a trading platform that functioned correctly without interruption."), *aff'd*, No. 22-15549, 2023 WL 2674367 (9th Cir. Mar. 29, 2023).

Accordingly, the amended complaint fails to state a claim for breach of the implied covenant of good faith and fair dealing.

## IV. CONCLUSION

Mr. Eskenasy has already been given one opportunity to amend his complaint. He was

United States District Court
Northern District of California

previously advised that "if the amended complaint fails to cure the defects described in [the July 8, 2026 screening order], the Court may issue an order reassigning the case to a district judge with a recommendation that the amended complaint be dismissed for lack of federal subject matter jurisdiction and failure to state a claim." Dkt. No. 5 at 1. As discussed above, the allegations in the amended complaint fail to state a basis for the Court to exercise subject matter jurisdiction or any plausible claim for relief. The Court finds no basis to conclude that there are additional facts that could be alleged on a further amendment to cure any of the deficiencies identified above.

Accordingly, the Court recommends that the amended complaint be dismissed without further leave to amend. The Court recommends that the action be dismissed for lack of subject matter jurisdiction, without prejudice to filing an appropriate complaint in state court.

Because not all parties have consented to magistrate judge jurisdiction, it is ordered that this case be reassigned to a district judge.

Any party may serve and file objections to this report and recommendation within 14 days after being served. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Civil L.R. 72-3.

**IT IS SO ORDERED.**

Dated: September 3, 2026

Virginia K. DeMarchi
United States Magistrate Judge